IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL BUCHERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 11-1254 |
| v. | ) | |
| | ) | **ELECTRONICALLY FILED** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Michael Buchert ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act").  This matter comes before the court upon cross-motions for summary judgment.  (ECF Nos. 7, 9).  The record has been developed at the administrative level.  For the following reasons, Plaintiff's Motion for Summary Judgment will be DENIED, and Defendant's Motion for Summary Judgment will be GRANTED.

**II.   PROCEDURAL HISTORY**

Plaintiff filed for DIB and SSI with the Social Security Administration on June 17, 2008, claiming an inability to work due to disability beginning May 10, 2006.  (R. at 137 – 152)[1].  Plaintiff was initially denied benefits on November 5, 2008.  (R. at 70 – 79).  A hearing was

---
[1]   Citations to ECF Nos. 5 – 5-10, the Record, *hereinafter*, "R. at __."

scheduled for April 14, 2010, and Plaintiff appeared to testify represented by counsel.  (R. at 22 – 48).  A vocational expert also testified.  (R. at 22 – 48).  The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on July 8, 2010.  (R. at 8 – 21).  Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on July 26, 2011, thereby making the decision of the ALJ the final decision of the Commissioner.  (R. at 1 – 5).

Plaintiff filed his Complaint in this Court on October 3, 2011.  (ECF No. 3).  Defendant filed his Answer on December 29, 2011.  (ECF No. 4).  Cross-motions for summary judgment followed.

### III. STATEMENT OF THE CASE

In his decision denying DIB and SSI to Plaintiff, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011;
2. The claimant has not engaged in substantial gainful activity since May 19, 2006, the alleged onset date;
3. The claimant has the following severe impairments: status post right hip fracture, status post elbow fracture, and high blood pressure;
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1;
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant is limited to a sit and stand option at his discretion;
6. The claimant is unable to perform any past relevant work;
7. The claimant was born on January 18, 1967 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date;
8. The claimant has at least a high school education and is able to communicate in English;
9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills;
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform; and,

      11. The claimant has not been under a disability, as defined in the Social Security Act, from May 10, 2006, through the date of this decision.

(R. at 11 – 21).

## IV.   STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schandeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777

(3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth,

4

and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'r v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

V.    **DISCUSSION**

Plaintiff objects to the determination of the ALJ, arguing that the ALJ erred in failing to give proper weight to Plaintiff's subjective complaints of pain and limitation, and in failing to properly credit the opinion of consultative examiner M. Bud Lateef, M.D., whose report allegedly implied at least a closed period of disability ending September 30, 2008. (ECF No. 10 at 6 – 9). Defendant argues that the ALJ's determination was supported by substantial evidence. (ECF No. 11). Specifically, Defendant claims that Plaintiff's complaints were contradicted by the objective medical evidence on record, and that not only did the consultative examiner's

5

opinion not imply a closed period of disability, it did not support any finding of disability. (ECF No. 8 at 9 – 16).

When rendering a decision, an ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). The ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 – 04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706). In the present case, the ALJ adequately met his responsibilities under the law.

As support for his decision to deny benefits to Plaintiff, the ALJ cited a number of Plaintiff's treating medical sources. The ALJ looked first to Plaintiff's time at Allegheny General Hospital ("AGH") in Pittsburgh, Pennsylvania, for approximately fifteen days beginning May 10, 2006. (R. at 15 – 16, 167 – 69, 195). Plaintiff was admitted to AGH following a fall from nearly forty feet while on the job as a roofer. (R. at 167 – 69, 195). Plaintiff landed on his right side, and sustained fractures to his right leg, pelvis, and arm. (R. at 167 – 69). Plaintiff was diagnosed with right intraarticular distal humerus fracture and right intertrochanteric subtrochanteric femur fracture. (R. at 167 – 69). Plaintiff underwent a number of surgical procedures to repair his injuries. (R. at 167 – 69). The procedures were completed by Gregory T. Altman, M.D. (R. at 167 – 69). Several days after his admission, hospital records noted that Plaintiff's urine tested positive for the presence of opiates, cocaine, and marijuana. (R. at 187).

Plaintiff was discharged from AGH on May 25, 2006. (R. at 181 – 82). Attending physician Vicente Cortes, M.D. completed the treatment summary, indicating that Plaintiff had tolerated his surgical procedures well, and engaged in physical and occupational therapy while at AGH. (R. at 181 – 82). Despite his inability to bear weight on his right side at that time, Dr. Cortes observed that Plaintiff had excellent mobility with the use of his wheelchair. (R. at 181 – 82). Plaintiff was to continue with therapy at home, and was provided with prescription pain medication for breakthrough pain. (R. at 181 – 82).

The ALJ looked at Dr. Altman's treatment records following Plaintiff's surgeries. (R. at 17, 19, 236 – 39). Plaintiff was examined four times between May and December 2006. (R. at 236 – 39). Dr. Altman's records included his observations that Plaintiff's injuries had healed well, he had active flexion and extension in his extremities, he had excellent supination and pronation in his extremities, and his sensation was normal. (R. at 236 – 39). Plaintiff was gradually able to put his full weight on his right leg. (R. at 236 – 39). Plaintiff was given a brace for his right elbow to help increase his range of motion. (R. at 236 – 39). While Plaintiff made progress, he continued to complain of pain in his elbow. (R. at 236 – 39). Dr. Altman explained that continual pain and decreased range of motion could be expected as a result of his injuries. (R. at 236 – 39).

The ALJ also looked at Plaintiff's physical therapy records in his analysis. (R. at 16 – 17). In an initial physical therapy evaluation on July 28, 2006, it was noted that Plaintiff complained of pain and stiffness in his right elbow and right hip subsequent to his accident and surgical interventions. (R. at 234). At that point, Plaintiff was capable of independent ambulation with the use of a crutch. (R. at 234). His range of motion was somewhat limited in his right elbow, but his right elbow supination and pronation were essentially normal. (R. at

7

234).  His strength was normal, as well.  (R. at 234).  Plaintiff's right hip showed a greater degree of limitation in range of motion and strength.  (R. at 234).  Yet, the prognosis for improvement in Plaintiff's right hip was considered to be good to excellent, and the prognosis for Plaintiff's right elbow was fair to good.  (R. at 234).

The ALJ discussed the records of Plaintiff's visitations with his primary care physician Timothy Ott, D.O. to further support his conclusions.  (R. at 17, 19).  Dr. Ott treated Plaintiff on a roughly monthly basis between June 2006 and August 2008.  (R. at 261 – 77).  During that time, Plaintiff frequently requested that Dr. Ott prescribe pain medications.  (R. at 261 – 77).  Dr. Ott often declined to do so.  (R. at 261 – 77).  Dr. Ott indicated that Plaintiff was working to decrease use of narcotic medications.  (R. at 261 – 77).  Plaintiff complained of significant pain in his hip and elbow – primarily in his elbow.  (R. at 261 – 77).  By March 2007, Plaintiff was noted to be walking well.  (R. at 261 – 77).   His walking and exercise gradually increased over time.  (R. at 261 – 77).  Plaintiff could not handle renewed attempts at employment if frequent bending was involved.  (R. at 261 – 77).  While pain limited his range of motion and strength, he had near normal strength and active range of motion in both the right elbow and right hip.  (R. at 261 – 77).  Dr. Ott did indicate that Plaintiff occasionally used a cane when his right hip and leg pain were problematic.  (R. at 286).

The ALJ also referenced the opinion of orthopedic physician Mark L. Lesh, M.D., from January 3, 2007.  (R. at 17, 281).  Dr. Lesh focused primarily on Plaintiff's right elbow, because Plaintiff did not complain of significant hip pain.  (R. at 281).  Plaintiff was noted to have done "reasonably well" following his surgery.  (R. at 281).  Plaintiff complained only of "some soreness about his elbow and some loss of elbow motion."  (R. at 281).  Upon examination, Dr. Lesh concluded that Plaintiff's right elbow results were good, and that he would not recommend

further surgical intervention. (R. at 281). Plaintiff was neurovascularly intact, his range of motion and pronation were limited, but his supination was full. (R. at 281). Plaintiff's right elbow had good strength and stability, and no tenderness was detected. (R. at 281).

Based upon the above evidence, the ALJ concluded that Plaintiff was capable of a full range of light work allowing for a discretionary sit-stand option. Plaintiff argues that the ALJ's residual functional capacity assessment did not fully accommodate his true limitations, and that the above medical evidence did not adequately encapsulate Plaintiff's degree of limitation. As support, Plaintiff cites his testimony at his administrative hearing which indicated that he must be in a reclined position frequently throughout the day to manage his pain. (R. at 40 – 41). Based upon the testimony of the vocational expert, a person so limited cannot engage in substantial gainful activity. (R. at 44 – 45).

However, the ALJ did not account for this claimed limitation because it was never mentioned by Plaintiff's treating sources, and because Plaintiff engaged in a number of other activities of daily living which tended to show that Plaintiff was not as limited as claimed. (R. at 19). Included among these activities was Plaintiff's ability to prepare meals, clean dishes, engage in light cleaning, supervise his children, wash his own laundry, shop independently, travel using public transit independently, and care for himself independently. (R. at 19). Plaintiff was capable of riding a bus for forty minutes to travel to his administrative hearing, because he was able to sit and stand as necessary. (R. at 15).

Plaintiff also cited M. Bud Lateef, M.D.'s consultative examination as proof of disability for at least a closed period ending September 20, 2008 – the date of the consultative examination. As discussed by the ALJ, Dr. Lateef found that Plaintiff was capable of "*at least* sedentary work duties." (R. at 18, 295) (emphasis added). Despite finding some issues with ongoing

inflammation and arthritis, Plaintiff had full range of motion in his joints. (R. at 295). Plaintiff ambulated independently without any abnormality in his gait. (R. at 294). Plaintiff was "very fit and muscular." (R. at 294). Dr. Lateef stated that exam findings were "not significant," and that Plaintiff's prognosis was "fair." (R. at 295).

The ALJ gave little weight to Dr. Lateef's opinion inasmuch as it would limit Plaintiff to only sedentary work, because the record – and most of Dr. Lateef's findings – indicated otherwise. (R. at 18). Plaintiff provides no evidence to refute the ALJ's conclusion, here. Plaintiff failed at past attempts working as a grocery store shelf-stocker, as a roofer, and as a painter following his surgery. This does not equate with the inability to perform light work as provided by the ALJ's residual functional capacity assessment, however. (ECF No. 10 at 7).

As to Plaintiff's contention that Dr. Lateef's consultative examination demonstrated that Plaintiff was incapable of engaging in any full-time work prior to September 30, 2008, there is no basis upon which such an inference can be made. Dr. Lateef did not state in his report that Plaintiff was disabled from full-time work at any point, let alone until the day just prior to his examination of Plaintiff. (R. at 292 – 95). Further, the evidence of record does not indicate that there was any continuous twelve month period during which Plaintiff was completely incapable of full-time work. (R. at 19). Dr. Lesh noted in January 2007 that Plaintiff had no significant complaints of pain in his hip, and only some soreness and decreased range of motion in the elbow. (R. at 281). In March 2007, Dr. Ott noted that Plaintiff was walking well. (R. at 261 – 77). As pointed out by the ALJ, while Plaintiff certainly suffered the ill effects of his severe injuries at the time of his application for benefits, the evidence of record did not show that the lasting limitations suffered by Plaintiff could not be accommodated for full-time work. Plaintiff has not put forth significant evidence illustrating otherwise. In light of the ALJ's thorough

discussion and the Court's review of the record, it is obvious that the denial of benefits to Plaintiff was supported by substantial evidence.

## VI. CONCLUSION

Based upon the foregoing, the Court finds that the ALJ adequately justified his decision not to find Plaintiff eligible for DIB or SSI. Accordingly, Plaintiff's Motion for Summary Judgment will be denied, Defendant's Motion for Summary Judgment will be granted, and the decision of the ALJ will be affirmed. An appropriate Order follows.

*/s Arthur J. Schwab*
Arthur J. Schwab
United States District Judge

cc/ecf: All counsel of record.